[Cite as *State v. Stock*, 2018-Ohio-3496.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105996**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**KENNETH STOCK, JR.**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-16-611398-A and CR-17-615116-A

**BEFORE:** Laster Mays, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 30, 2018

-i-

**ATTORNEYS FOR APPELLANT**

Leslie Johns
The Martinez Firm
1147 Pennfield Road
Cleveland, Oh   44121

Russell S. Bensing
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Marc Bullard
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1}    Defendant-appellant Kenneth Stock, Jr. ("Stock") appeals the trial court's denial of his motion to suppress evidence, following a no contest plea and finding of guilt for multiple charges.   We affirm.

## I.    Background and Facts

{¶2}    On November 22, 2016, Stock was indicted in Cuyahoga C.P. No. CR-16-611398-A for:

Count One:   Trafficking in marijuana (200-1000 g.), R.C. 2925.03(A)(2), a third-degree felony, with school yard and forfeiture specifications;

Count Two:   Possession of marijuana (200-1000 g.), R.C. 2925.11(A), a fifth-degree felony, with forfeiture specifications;

Count Three:  Abusing harmful intoxicants, R.C. 2925.31.03(A), a fifth-degree felony, with forfeiture specifications;

Count Four:  Illegal manufacture or cultivation of marijuana (20,000 g.), R.C. 2925.04 (A), a second-degree felony, with forfeiture specifications;

Count Five:   Trafficking in marijuana (40,000 g.), R.C. 2925.03(A)(2), a second-degree felony, with forfeiture specifications;

Count Six:   Possession of marijuana (40,000 g.), R.C. 2925.11(A), a second-degree felony with forfeiture specifications;

Count Seven:  Possession of criminal tools, R.C. 2923.24(A), a fifth- degree felony with forfeiture specifications.

{¶3}    The parties filed a series of motions:   Stock's motion to suppress,   state's opposition to motion to suppress, and   Stock's motion to suppress/dismiss.   A suppression hearing was held on March 6, 2017.   On March 8, 2017, the trial court granted Stock's motion

for independent drug testing. On March 20, 2017, the trial court issued findings of fact and conclusions of law denying Stock's motion to suppress.

**{¶4}** On May 9, 2017, the trial court denied Stock's motion to suppress his oral statements. The trial court also denied Stock's motion to dismiss.[1]

**{¶5}** Stock was sentenced on June 15, 2017. The court found that Count 1 merged with Count 2 and Count 5 merged with Count 6. Stock was sentenced to three years on Count 1, six months on Count 3, a mandatory eight years on Counts 4 and 5, and six months on Count 7, with all sentences to run concurrently, in addition to postrelease control, fines, and various forfeitures. The trial court granted an appellate bond, and Stock timely filed the instant appeal.

**{¶6}** We first acknowledge the propriety of this appeal under the facts of this case. Crim.R. 12(I) states, a "plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." *See State v. McCormick*, 41 Ohio App.3d 158, 160, 534 N.E.2d 942 (8th Dist.1988).

## II. Assignment of Error

**{¶7}** Stock's single assignment of error challenges the denial of his motion to suppress: whether the court erred in denying a motion to suppress evidence obtained pursuant to five search warrants where the affidavit in support of the first warrant fails to establish probable cause for its issuance, and the subsequent warrants use information collected by the preceding warrants?

## III. Discussion

---

[1] Also on May 9, 2017, and incorporated into the trial court's entry, Stock pleaded no contest to all counts and the state dismissed the pending indictments in *State v. Stock*, Cuyahoga C.P. No. CR 17-615116-A involving drug-related offenses.

**A.     Standard of Review**

**{¶8}**     Individuals are protected from illegal searches and seizures by the Fourth Amendment to the United States Constitution. "In order to employ Fourth Amendment protections, a defendant must have a 'constitutionally protected reasonable expectation of privacy.'" *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

**{¶9}**     The hybrid nature of appellate review of a trial court's denial of a motion to suppress, involving mixed questions of law and fact, dictates that we give deference to the trial judge's findings of fact, but conduct a de novo review of the application of the law to the facts. *State v. Lennon,* 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, ¶ 45, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, and *State v. Davis*, 8th Dist. Cuyahoga No. 83033, 2004-Ohio-1908.

**{¶10}**     Search warrant affidavits enjoy a presumption of validity. *State v. Sheron*, 8th Dist. Cuyahoga No. 98837, 2013-Ohio-1989, ¶ 29, citing *State v. Roberts,* 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980).   A challenger must meet stated criteria:

> In *Roberts*, the Ohio Supreme Court held that "a challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim." *Id.*, citing *Franks v. Delaware*, 438 U.S. 154, 171-172, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).   As the United States Supreme Court held in *Franks*, a challenge to the affiant's veracity requires "allegations of deliberate falsehood or of reckless disregard for the truth." *Id*. at 171.   Such allegations must be supported by an "offer of proof [that] should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained." *Roberts* at 178.

> In order to require a trial court to hold a hearing, a defendant must first make a "substantial preliminary showing" that the affiant included a false statement in the affidavit either knowingly and intentionally, or with reckless disregard for the truth. *Id*. at 177; *Franks* at 155.   Even if a defendant makes a sufficient preliminary showing, a hearing is not required unless, without the allegedly false

statements, the affidavit is unable to support a finding of probable cause. *Id*. at 178; *Franks* at 171-172.

*Sheron* at ¶ 30-31.

**{¶11}** *Franks* requires: (1) "allegations of deliberate falsehood" or of a "reckless disregard for the truth"; (2) an "offer of proof"; (3) identification of the false affidavit sections; (4) an explanation of the supporting rationale; and (5) sworn statements or an explanation for their absence. *Franks* at 171.

**B.      Analysis**

**{¶12}**   Stock challenges the affidavits underlying the five search warrants issued in this case for:  (1) Global Positioning System ("GPS"); (2) thermal imaging; (3) Hamilton Avenue; (4) Hilliard Road I; and (5) Hilliard Road II. "[E]ach of the five search warrants and affidavits at issue built off of each other and were signed September 29, 2016, October 4, 2016, two on October 7, 2016, and one on October 12, 2016." Journal entry No. 98117582 (Mar.  20, 2017), p. 7.

**{¶13}**    Stock and the trial court agreed that each of the affidavits is based on the other, beginning with the GPS affidavit ("GPS Affidavit").  Our analysis of the validity of the GPS Affidavit and warrant is determinative of the validity of the remaining warrants.   Thus, we focus on the GPS Affidavit.

**1.      GPS Affidavit and Warrant**

**{¶14}**     Crim.R. 41 governs the authority to issue search warrants for tracking devices. Crim.R. 41(G).  The rule authorizes warrants for tracking devices to be installed "within the court's territorial jurisdiction," but the warrants may authorize tracking "within or outside of the

court's territorial jurisdiction, or both." Crim.R. 41(A)(2). The warrants are valid for periods not to exceed 45 days but may be extended for good cause. Crim.R. 41(C)(2).

{¶15} Crim.R. 41(C)(2) provides direction regarding the content of the warrant. The warrant must specify the time frame for installation that may not be more than ten days from the time the warrant is issued and the device may not be used for more than 45 days without permission from the court. The warrant must also provide for device installation during the day unless the court approves otherwise.

{¶16} Crim.R. 41(D)(2) prescribes warrant execution and return. The executing officer must document the date and time of device installation as well as the period of use. Within ten days of use termination, a copy of the warrant must be served on the individual whose person or property is the subject of the warrant by the methods set forth in the statute. Notification may be delayed with court authorization "for good cause shown." *Id*.

{¶17} The September 29, 2016 GPS Affidavit of Detective Jopek ("Det. Jopek") with the Narcotics Unit of the Cuyahoga County Sheriff's Department ("CCSD Narcotics") sought authorization to install a battery-operated GPS tracking device on Stock's black SUV, identified in appropriate detail in the GPS Affidavit, for a period of 30 days.

{¶18} The GPS Affidavit recounted Det. Jopek's 16 years of training and experience in law enforcement, including four years with CCSD Narcotics. Det. Jopek received training regarding illegal narcotics including identification, testing, packaging, sales operations, and detection.

{¶19} The GPS Affidavit also provided that all information known to investigators was not described and included only enough to establish probable cause. Det. Jopek averred that the SUV, registered in Garrettsville, Ohio, "is being or will be used to transport marijuana, and/or

reveal the stash location where large quantities of marijuana are being stored" by suspect Stock. GPS Affidavit, p. 4. It further recited that the SUV "is presently located within Cuyahoga County" and tracking will reveal drug possession and trafficking offenses pursuant to R.C. 2925.11 and 2925.03.

{¶20} The GPS Affidavit revealed that Dets. Jopek and Pavlas of CCSD Narcotics were assigned Crime Stoppers Tip W3560 advising that Stock was dealing "cocaine, marijuana, molly, and pills" from an address on Hillard Road in Lakewood, Ohio, and that Stock operated a "marijuana grow lab" at an address on Hamilton Avenue in Cleveland, Ohio. *Id*. at p. 4. Also averred is that Stock's criminal history included possession and trafficking of drugs, and an outstanding warrant for a 2015 marijuana charge.

{¶21} Surveillance conducted "within the past week" revealed that a ten- foot chain link fence "secured" the rear of the Hamilton Avenue building. *Id*. at p. 5. The only windows were located at the front of the building and "appeared" to be covered with a white obstruction. *Id.* The lock and a vent pipe "appeared" to be newer. *Id*. No activity or vehicles were observed.

{¶22} Surveillance was also conducted "within the past week" at the Hilliard Road address. No activity or vehicles were observed, but the Lakewood police responded to the address in June 2016 for a "welfare check" and Stock was present. *Id.*

{¶23} The same week, billing information indicated the electric bill was in Stock's name and he was listed as the contact person for Hamilton Avenue. Spot surveillance at Hamilton Avenue and Hilliard Road was unfruitful. Lakewood police reported that Stock's SUV was parked on a street near Hilliard Road but CCSD Narcotics' surveillance was not successful.

**{¶24}** Utility records revealed that electricity consumption at Hamilton Avenue and Hilliard Road was two to three times that of neighboring residences and businesses within the prior 60 days. Covert marijuana cultivation operations are power intensive. The equipment and growth operations are stationary for several months prior to harvest. Stock would have to travel to the location periodically and also use a vehicle to distribute the narcotics and meet with other traffickers.

**{¶25}** The affiant concluded that Stock would use the SUV for travel in furtherance of the illegal drug activities and "to meet with other co-conspirators." *Id*. at 8. The GPS Affidavit offered that GPS monitoring would assist in locating "evidence of criminal activity, without jeopardizing the ongoing investigation." *Id*. GPS monitoring was requested for 30 days with the right to install the GPS tracker "at any time of the day or night" and to delay notice of the GPS tracker to Stock until the investigation concluded to avoid destruction of evidence. The search warrant was issued on September 29, 2016.

**{¶26}** Stock argues that the state lacked probable cause to issue a warrant and failed to establish the existence of a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The state responds that probable cause is demonstrated by the totality of the circumstances test employed in *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989).

**{¶27}** "The standard for finding probable cause does not require a prima facie showing of criminal activity, but only the probability of criminal activity." *State v. Weimer*, 8th Dist. Cuyahoga No. 92094, 2009-Ohio-4983, ¶ 29, citing *Gates* at syllabus. "However, *Gates* requires a 'common sense review' of 'the totality of circumstances' surrounding the GPS Affidavit and evidence in this case. *Id*." *Weimer* at ¶ 29.

**{¶28}** The anonymous tipster identified Stock as a drug dealer, described his SUV and the two properties, and advised that Stock would be transporting large amounts of marijuana. We recognize that anonymous tipster information is considered to be the "least reliable source" in the range of cooperating individuals who serve as a source of information for criminal investigations. *State v. Beltran*, 8th Dist. Cuyahoga Nos. 86359 and 86360, 2006-Ohio-1085, ¶ 36.

**{¶29}** An anonymous tip "will generally require police corroboration." *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999), citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). CCSD Narcotics verified ownership of the SUV and that Stock was connected to both of the properties as evidenced by a 2016 Lakewood police encounter with Stock during a welfare check at Hilliard Road.

**{¶30}** The excessive power consumption documented over the prior 60 days at the two property locations is a hallmark of marijuana cultivation. The electricity is needed for "grow lamps, balasts, irrigation systems, and cooling/venting systems." GPS Affidavit at p. 7.

**{¶31}** "[E]vidence of a suspect's high electric use is relevant in determining probable cause." *State v. Adkins*, 12th Dist. Butler Nos. CA2014-02-036 and CA2014-06-141, 2015-Ohio-1698, ¶ 67, citing *State v. Swift*, 12th Dist. Butler No. CA2013-08-161, 2014-Ohio-2004, ¶ 20, citing *State v. Thomas*, 10th Dist. Franklin No. 12AP-928, 2014-Ohio-1489, ¶ 14 ("electricity use data is a relevant factor for purposes of probable cause"). *See also State v. Leibold*, 2d Dist. Montgomery No. 25124, 2013-Ohio-1371, ¶ 24, and *State v. Gantz*, 106 Ohio App.3d 27, 34-36, 665 N.E.2d 239 (10th Dist.1995).

**{¶32}** The secure fence, newer vent pipe, and locked and covered windows at Hamilton Avenue is also suggestive of cultivation activities. "[A]luminum foil on windows is indicative of measures taken by individuals to conceal indoor marijuana growing operations as well as to reflect light upon the plants." *Gantz* at 35, citing *United States v. Robertson*, 39 F.3d 891, 894 (8th Cir.1994), and *State v. Middleton*, 79 Ore.App. 794, 720 P.2d 1310 (1986), finding foil-covered windows to be relevant in determining probable cause.

**{¶33}** Stock also argues that the criminal history and information about an outstanding marijuana warrant is "highly misleading," and was offered only to "buttress the anonymous tipster's portrayal" of Stock "as a major drug dealer." Appellant's brief at p. 11.

> Stock has a criminal history involving domestic violence, violation of the state drug law, drug abuse, possession of drugs, trafficking in drugs, possession of criminal tools, failure to comply, possession of marijuana, probation violation and telephone harassment.

GPS Affidavit at p. 2.

**{¶34}** We do not find that the information was misleading and agree with the trial court's determination that Det. Jopek "did not state or imply that" the history is comprised of Stock's "convictions." Journal entry No. 98117582 (Mar. 20, 2017), at p. 9. Det. Jopek "simply enumerated each offense that the LEADS report listed as arrests, hence the use of the word 'involving'." *Id*.

**{¶35}** We also reject Stock's argument as to staleness. The GPS Affidavit is dated September 29, 2016. It states that CCSD Narcotics was assigned the anonymous tip from Crime Stoppers within the past week and researched Stock on September 21, 2016. The succeeding activities recite the application dates, time or time frame. Each activity was within the week to a ten-day window. "'Although specific references to date and times are best, there is no hard and

fast rule as to the staleness issue.'" *Id.* at p. 7, quoting *State v. Coleman*, 8th Dist. Cuyahoga No. 91058, 2009-Ohio-1611, ¶ 53, quoting *State v. Proffit*, 5th Dist. Fairfield No. 07CA36, 2008-Ohio-2912, ¶ 20.

**{¶36}** "The test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant is issued." *State v. Willard*, 8th Dist. Cuyahoga No. 99184, 2013-Ohio-3001, ¶ 15, citing *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, ¶ 12, citing *State v. Floyd*, 2d Dist. Darke No. 1389, 1996 Ohio App. LEXIS 1152 (Mar. 29, 1996).

**{¶37}** Considering the totality of the circumstances and affording deference to the trial court's finding of probable cause, it is this court's finding that "the GPS warrant was supported by sufficient probable cause" and the motion to suppress was properly denied. *Willard* at ¶ 27. As Stock concedes, "[a]ll of the searches here, and the evidence discovered in them, hinge upon the validity of the GPS warrant." Appellant's brief, p. 13. Thus, our conclusion is determinative of the merits of this appeal.

**{¶38}** The trial court's order is affirmed.

It is, therefore, ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN JUDGMENT ONLY
KEYWORDS